# IN THE COURT OF APPEALS OF IOWA

No. 15-0634
Filed May 25, 2016

IN RE DETENTION OF

**DANIEL JOSEPH SCOTT,**
     Respondent-Appellant.

_____

     Appeal from the Iowa District Court for Johnson County, Douglas S. Russell, Judge.

     Daniel Scott appeals the jury's verdict finding he is not suitable for discharge from civil commitment pursuant to Iowa Code chapter 229A (2015). **AFFIRMED.**

     Adam C. Gregg, State Public Defender, and Thomas J. Gaul, Assistant Public Defender, Special Defense Unit, State Public Defender's Office, for appellant.

     Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee State.

     Considered by Vogel, P.J., and Doyle and Bower, JJ

**DOYLE, Judge.**

Daniel Scott appeals the jury's verdict finding he is not suitable for discharge from civil commitment pursuant to Iowa Code chapter 229A (2015), asserting the district court erred in denying his motions for summary judgment and for a directed verdict. Our review is for correction of errors at law. *See In re Det. of Stenzel*, 827 N.W.2d 690, 697 (Iowa 2013); *In re Det. of Hennings*, 744 N.W.2d 333, 340 (Iowa 2008); *see also* Iowa R. Civ. P. 6.907. Summary judgment is only appropriate when, viewing the record in the light most favorable to the opposing party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3); *Walker v. State*, 801 N.W.2d 548, 554 (Iowa 2011). A directed verdict is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, the State failed to present substantial evidence on each element of the claim, meaning, from the evidence presented, a jury could not reasonably infer a fact from the evidence. *See Hennings*, 744 N.W.2d at 340.

A "sexually violent predator" is defined as "a person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility." Iowa Code § 229A.2(12). A person is "likely to engage in predatory acts of sexual violence" if "the person more likely than not will engage in acts of a sexually violent nature." *Id.* § 229A.2(5).

In this case, the record

> reveals that in 1984 twenty-seven-year-old Scott took a customer
> back to his tow-service business and forced her to perform oral sex
> upon him. He pled guilty to third-degree kidnapping and sexual
> abuse in exchange for receiving immunity from other sexual
> assaults that were committed around this same time. Scott was
> released from prison in the fall of 1989.
>
> The following March, thirty-three-year-old Scott assaulted a
> female acquaintance by grabbing her breast and forcing her to
> place her hand on his exposed penis while he gave her a ride
> home. He was convicted of assault with intent to commit sexual
> abuse and sentenced to prison.
>
> After his release from prison, Scott lost his left leg in a
> motorcycle accident and began working as a taxicab driver. On
> September 2, 1997, forty-year-old Scott sexually assaulted a
> female passenger by grabbing her breasts in his cab. The next
> day, he assaulted another female passenger in a similar manner.
> Scott was convicted of assault with intent to commit sexual abuse
> and third-degree sexual abuse as an habitual offender.

*In re Det. of Scott*, No. 06-0556, 2007 WL 3085880, at *1 (Iowa Ct. App. Oct. 24,

2007).

In 2006, Scott was found to be a sexually violent predator and civilly

committed. *See id.* at *2. He subsequently appealed that finding, and this court

affirmed. *See id.* at *4.

"Following the filing of an annual report in May 2009, the district court

granted Scott's request for a final hearing on whether he was eligible for

discharge," and a hearing before a jury was subsequently held. *In re Det. of

Scott*, No. 11-0653, 2012 WL 1860758, at *1 (Iowa Ct. App. May 23, 2012). At

the time of that hearing, Scott was fifty-four years old and had many health

conditions: "Both of his legs have been amputated. He has diabetes and heart

problems—having suffered two major heart attacks—suffers from acute kidney

disorder, and wears a catheter. Scott's medical problems are severe enough

that he was unable to make progress in his treatment." *Id.* at *2. The State presented expert testimony opining that Scott was likely to reoffend despite his health conditions. *See id.* Scott presented his own experts, one of whom opined that "Scott's declining health would diminish his risk of committing sexually violent offenses." *Id.* After hearing the evidence, the jury found "Scott's mental abnormality remained such that he was likely to engage in predatory acts constituting sexually violent offenses." *Id.* at *1. Scott appealed that finding, arguing there was "insufficient evidence that he would likely commit sexually violent offenses if discharged" and noting his treatment, age, and physical health made "it unlikely he would reoffend." *Id.* at *2. Viewing the record in the light most favorable to the State, we affirmed the verdict finding Scott's civil commitment should continue. *Id.* at *2.

Following Scott's November 2014 annual report, an annual review hearing was held. The district court concluded Scott

> met his burden of showing, by a preponderance of the evidence, there is relevant and reliable evidence that would lead a reasonable person to believe a final hearing should be held to determine if either: 1) the mental abnormality of the committed person has so changed that the person is not likely to engage in predatory acts constituting sexually violent offenses if discharged; or 2) the committed person is suitable for placement in a transitional release program pursuant to section 229A.8A.

The hearing was held before a jury in March 2015, and the case was again a battle of the experts. The State's expert opined that Scott continues to have a mental abnormality—antisocial personality disorder—and, despite treatment, Scott was still more likely than not to commit acts constituting sexually violent offenses. Even considering Scott's physical limitations, the expert opined

he was still more likely than not to reoffend, pointing out that Scott committed sexual offenses even after he lost his first leg in 1992 and his particular offenses of grabbing and touching were things he could still do while seated in a wheelchair. The expert believed Scott still possessed several dynamic risk factors, such as a lack of insight into his actions and lack of the ability to manage his emotions and outbursts. Conversely, Scott's experts, Drs. Reese and Rypma, opined that Scott's physical condition made Scott unlikely to reoffend. The matter was submitted to the jury, which found that Scott's mental abnormality had not "so changed that he is no longer likely to engage in predatory acts constituting sexually violent offenses if discharged" and that he was not suitable for placement in a transitional release program.

Viewing the evidence in the light most favorable to the State, we are unable to find the court erred in denying Scott's motions for summary judgment and for a directed verdict. Under Iowa Code section 229A.8(1), "a rebuttable presumption exists that the commitment should continue." Scott's experts rebutted that presumption, warranting a hearing "to determine whether [Scott] no longer suffer[ed] from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses if discharged, or the committed person is suitable for placement in a transitional release program." Nevertheless, given the State's opposing position and its expert's supporting opinion, clearly a genuine issue of material fact existed making summary judgment inappropriate. Consequently, the court did not err in denying Scott's motion for summary judgment.

Moreover, the State's expert testimony substantially supported the jury's conclusion that Scott continued to suffer "from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses if discharged" and was not suitable for placement in a transitional release program. Although Scott's experts offered contrary opinions, it is not this court's function to determine the correctness of either the theory or testimony between experts; rather, it is for the jury to decide which expert is more credible and whose opinion it accepts. *See In re Det. of Altman*, 723 N.W.2d 181, 185 (Iowa 2006); *see also State v. Jacobs*, 607 N.W.2d 679, 685 (Iowa 2000) ("When conflicting psychiatric testimony is presented to the fact finder, the issue . . . is clearly for the fact finder to decide. The . . . trier of fact is not obligated to accept opinion evidence, even from experts, as conclusive. When a case evolves into a battle of experts, . . . the reviewing court . . . readily defer[s] to the [fact finder's] judgment as [they are] in a better position to weigh the credibility of the witnesses." (citations omitted.)). Here, the jury chose to accept the State's expert's opinion over Scott's experts' opinions. Because substantial evidence supported the jury's verdict, the district court did not err in denying Scott's motion for a directed verdict. Accordingly, we affirm the verdict finding Scott's civil commitment should continue.

**AFFIRMED.**

.